**ALEXANDER RANCH, INC. and
Wendylou Ranch, Inc.,
Appellants,**

v.

**CENTRAL APPRAISAL DISTRICT OF
ERATH COUNTY et al., Appellees.**

No. 11–86–192–CV.

Court of Appeals of Texas,
Eastland.

May 21, 1987.
Rehearing Denied June 18, 1987.

Richard D. Coan, Coan & Shell, P.C., Stephenville, for appellants.

Brian E. Brown, Calame, Linebarger & Graham, Austin, for appellees.

1. The petition for review was brought against the Erath County Appraisal District and the Erath County Appraisal Review Board as required

## OPINION

McCLOUD, Chief Justice.

The principal issue in this case is whether or not TEX.TAX CODE ANN. sec. 23.-56(3) (Vernon 1982) violates the Equal Protection Clause of the fourteenth amendment to the United States Constitution. Section 23.56(3) excludes from appraisal as open-space land real property owned by a corporation controlled by nonresident aliens.

Alexander Ranch, Inc. and Wendylou Ranch, Inc. filed a petition for review in the district court [1] urging that the Erath County Appraisal Review Board erred in finding that the land which they owned should not be appraised as open-space agricultural land as defined by TEX.TAX CODE ANN. sec. 23.52 (Vernon 1982). The trial court held that the review board properly determined that the land was not eligible to be appraised as open-space land. The landowners appeal. We affirm.

The trial court's ruling was based upon TEX.TAX CODE ANN. sec. 23.56 (Vernon 1982) which provides in part:

Land is not eligible for appraisal as provided by this subchapter if:

\* \* \* \* \* \*

(2) the land is owned by an individual who is a nonresident alien or by a foreign government if that individual or government is required by federal law or by rule adopted pursuant to federal law to register his ownership or acquisition of that property; or

(3) the land is owned by a corporation, partnership, trust, or other legal entity if the entity is required by federal law or by rule adopted pursuant to federal law to register its ownership or acquisition of that land and a *nonresident alien or a foreign government or any combination of nonresident aliens and foreign governments own a majority interest in the entity.* (Emphasis added)

by TEX.TAX CODE ANN. sec. 42.21 (Vernon Supp.1987).

The facts were stipulated. The landowners, Alexander and Wendylou, are Texas corporations. Both corporations are required by federal law to register their ownership of the land in question because nonresident aliens own a majority interest in each corporation. See 7 U.S.C.A. sec. 3501 et seq. (West Supp.1987). Except for the nonresident alien stockholder limitation in Section 23.56(3), the land meets all the requirements to entitle it to be appraised as open-space land under Section 23.52.

■ Initially, the taxing authorities argue that the trial court's judgment must be affirmed because the constitutional issue was not properly raised. They cite *City of Garland v. Louton,* 691 S.W.2d 603 (Tex. 1985), and *Wichita County v. Robinson,* 276 S.W.2d 509 (Tex.1954), to support their position that, when the constitutionality of a statute is raised in a case brought under the Texas Declaratory Judgments Act, Texas law requires "substantial compliance" with TEX.CIV.PRAC. & REM.CODE ANN. sec. 37.006 (Vernon 1986) which provides for notice to the Attorney General. The Attorney General's office was not notified of this suit.

The landowners did not bring a suit under the Texas Declaratory Judgments Act. See TEX.CIV.PRAC. & REM.CODE ANN. sec. 37.001 et seq. (Vernon 1986). The landowners filed a statutory petition for review as specifically provided for in TEX.TAX CODE ANN. sec. 42.21 (Vernon Supp.1987).[2] See *Brooks v. Bachus,* 661 S.W.2d 288 (Tex.App.—Eastland 1983, writ ref'd n.r.e.). This is so even though the landowners state at one point in their petition: "Under the laws of the State of Texas and particularly Article 2524–1 et seq. of the Texas Revised Civil Statutes, this Court has jurisdiction to determine questions of construction of statutes...."[3] We hold that, since this was not a suit under the Declaratory Judgments Act, notice to the Attorney General was not required.

The thrust of the landowners' argument on the constitutional question is that the classification of land ownership under the Texas statute is based on alienage, an inherently suspect classification; therefore, it is subject to close judicial scrutiny. See *Graham v. Richardson,* 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971). If the classification involves a "suspect class," the State must show that the classification was precisely tailored to serve a compelling governmental interest. *Plyler v. Doe,* 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). Neither *Graham* nor *Plyler* are controlling. Both cases, as well as the other cases cited by the landowners, concern "resident" aliens. The exemption statute under consideration speaks to "nonresident" aliens who own a majority interest in a corporation.

We think the correct rule was applied by the Supreme Court of Wisconsin in *Lehndorff Geneva, Inc. v. Warren,* 74 Wis.2d 369, 246 N.W.2d 815 (1976). There, a Texas corporation whose stock was owned by nonresident aliens brought suit challenging the constitutionality of a Wisconsin statute limiting the amount of land that a corporation could own in Wisconsin if more than 20 percent of the stock of the corporation was owned by nonresident aliens. The Texas corporation argued that the Court should apply the strict scrutiny standard of review because the classification, based on nonresident alien status, was suspect. The State of Wisconsin argued that the United States Supreme Court decisions do not require strict scrutiny when the classification concerns "nonresident" aliens.

The Wisconsin Supreme Court cited *Graham v. Richardson,* supra, and pointed out that it is beyond doubt that resident aliens enjoy the "heightened judicial solicitude" of a suspect class. As to resident aliens, the Wisconsin Supreme Court stated:

In summary, the cases which called for a "heightened judicial solicitude" toward aliens dealt with statutes which obstruct-

2. The parties stipulated that the landowners fulfilled the "jurisdictional requirements" of TEX.TAX CODE ANN. secs. 41.44, 42.06, 42.08, & 42.21 (Vernon 1982 & Supp.1987).

3. The Texas Declaratory Judgments Act, before the enactment of the Civil Practice & Remedies Code, was found in TEX.REV.CIV.STAT.ANN. art. 2524–1 et seq.

ed the normal affairs of life even though the national government had determined that the aliens in question could live in this country. As residents, these aliens bore the burdens imposed by society but not the sought-after benefits. Nor could they participate in the political process, which is the normal avenue of redress for a citizen unhappy with a governmentally-imposed burden. In this type of situation, the court repeatedly held, "heightened judicial solicitude" is appropriate.

But, as to nonresident aliens, the Court said:

> None of these considerations appears in the instant case, in which foreign nationals who reside outside our borders have voluntarily associated with each other simply to have an investment vehicle here. The duties and burdens shared by the resident alien in common with the citizen entitles him to most of the benefits enjoyed by citizens. But burden sharing, except for payment of taxes in connection with the ownership or development of the land, is lacking in the case of the nonresident aliens in the case before us.

*Lehndorff Geneva, Inc. v. Warren*, supra 246 N.W.2d at 822.

The Wisconsin Supreme Court, rejecting as do we the argument that nonresident aliens are a suspect class, held:

> We conclude the plaintiffs do not possess the characteristics which warrant heightened judicial solicitude and the state has acted in an area traditionally within its province. Therefore the proper test is found in *Simanco v. Dept. of Revenue* (1973), 57 Wis.2d 47, 54, 203 N.W.2d 648. Only if a challenger can show that the classification is arbitrary and has no reasonable purpose or relationship to the facts or a justifiable and proper state policy will a legislative classification fall on the grounds of a denial of equal protection.

*Lehndorff Geneva, Inc. v. Warren*, supra 246 N.W.2d at 824–25. The following cases also distinguish between resident and nonresident aliens when applying the Equal Protection Clause: *De Tenorio v. McGowan*, 510 F.2d 92 (5th Cir.1975), *cert. denied*, 423 U.S. 877, 96 S.Ct. 150, 46 L.Ed.2d 110 (1975); *Alvarez Martinez v. Industrial Commission of State of Utah*, 720 P.2d 416 (Utah 1986); and *Pedrazza v. Sid Fleming Contractor, Inc.*, 94 N.M. 59, 607 P.2d 597 (1980).

■ The classification of nonresident aliens is not an inherently suspect classification and, therefore, does not require strict judicial scrutiny.

■ The United States Supreme Court has long recognized that the States have much discretion where classification for taxation purposes is concerned and has repeatedly held that, where no specific federal right, apart from equal protection, is concerned, the States have a large leeway in distinguishing between classifications. *Williams v. Vermont*, 472 U.S. 14, 105 S.Ct. 2465, 86 L.Ed.2d 11 (1985); *Kahn v. Shevin*, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974); *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973); *Allied Stores of Ohio v. Bowers*, 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959). The Equal Protection Clause does not impose an iron rule of equality, prohibiting the flexibility and variety that are appropriate to reasonable schemes of state taxation. *Allied Stores of Ohio v. Bowers*, supra.

In *Allied Stores of Ohio v. Bowers*, supra 358 U.S. at 527, 79 S.Ct. at 441, the Court stated the standard of review for nonsuspect classifications:

> The State must proceed upon a rational basis and may not resort to a classification that is palpably arbitrary. The rule often has been stated to be that the classification "must rest upon some ground of difference having a fair and substantial relation to the object of the legislation." "If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law." That a statute may discriminate in favor of a certain class does not render it arbitrary if the discrimination is founded

upon a reasonable distinction, or difference in state policy. (Citations omitted) See also *Williams v. Vermont,* supra; *Lehnhausen v. Lake Shore Auto Parts Co.,* supra.

■ TEX.TAX CODE ANN. sec. 23.51 et seq. (Vernon 1982) was enacted pursuant to TEX. CONST. art. VIII, sec. 1–d–1 which provides, in part, that:

> To promote the preservation of open-space land, the legislature shall provide by general law for taxation of open-space land devoted to farm or ranch purposes.... The legislature by general law may provide eligibility limitations under this section and may impose sanctions in furtherance of the taxation policy of this section.

It is apparent that the purpose of the open-space exemption in Section 23.51 et seq. is to preserve and benefit the family farm. See *Gragg v. Cayuga Independent School District,* 539 S.W.2d 861 (Tex.1976); *San Marcos Consolidated Independent School District v. Nance,* 495 S.W.2d 335 (Tex.Civ. App.—Austin), *writ ref'd n.r.e. per curiam,* 502 S.W.2d 694 (1973).

In *Gragg v. Cayuga Independent School District,* supra at 865 n. 2, the Court observed that the Texas Legislative Council, while analyzing a prior constitutional amendment dealing with the taxing of land used for agricultural purposes, stated:

> Family farming is a wholesome occupation but is often a risky or marginal business. Any extra burden placed on the family farmers threatens to drive thousands off the land and onto the unemployment and welfare rolls. When the city approaches the farm, the tax burden to the farmer often becomes prohibitive. An equitable tax adjustment, such as the one proposed by this amendment will help to preserve the family farm.

The Court in *Gragg v. Cayuga Independent School District,* supra at 865, said:

> For the first one hundred years of its existence, Texas was largely a rural State. By 1965, increased urbanization had caused increased market values on agricultural lands near metropolitan areas due to industrial expansion, residential subdivisions, and speculative buying. Payment of taxes on market value as required by the Constitution of 1876 was discouraging farmers and ranchers from continuing their agricultural uses and was in some instances forcing sales and loss of both land and personnel from the essential business of producing food and fiber. See the Texas Legislative Council Report cited in note 2 and Report to the 62nd Legislature of the Agricultural Land Assessment Study Committee under H.C.R. 8, 61st Leg., Reg. Session.

■ A reasonable distinction can be made between residents, whether citizens or aliens, and nonresident aliens. If the farm or ranch owned or controlled by residents should fail because of excessive taxation of agricultural land, these residents would have lost their means of income. There would be, as observed by the Texas Legislative Council, thousands joining the ranks of the unemployed and welfare rolls. If, however, farms or ranches owned by nonresident aliens or corporations controlled by nonresident aliens should fail, the owners of the agricultural land would have lost a speculative interest in the land but would not become a burden to the State or national welfare systems. The classification contained in Section 23.56(3) rests upon differences having a fair and substantial relation to the object of the legislation; this classification does not violate the Equal Protection Clause. *Allied Stores of Ohio v. Bowers,* supra.

The landowners also argue that the trial court erred in holding that TEX.PROP. CODE ANN. sec. 5.005 (Vernon 1984) and TEX.TAX CODE ANN. sec. 23.56(3) (Vernon 1982) are not in irreconcilable conflict. They contend that under proper code construction pursuant to TEX.GOV'T CODE ANN. sec. 311.026 (Vernon Pamph.1987), Section 5.005 should prevail.

Section 5.005 provides:

> An alien has the same real and personal property rights as a United States citizen.

TEX.GOV'T CODE ANN. sec. 311.026 states:

(a) If a general provision conflicts with a special or local provision, the provisions shall be construed, if possible, so that effect is given to both.

(b) If the conflict between the general provision and the special or local provision is irreconcilable, *the special or local provision prevails as an exception to the general provision, unless the general provision is the later enactment and the manifest intent is that the general provision prevail.* (Emphasis added)

■ Section 5.005 of the Property Code is a broad, general provision. Section 23.56 of the Tax Code is a specific, special provision. The Property Code, containing Section 5.005, became effective on January 1, 1984. The Tax Code, containing Section 23.56, became effective January 1, 1981. The landowners contend that the later code, the Property Code, should prevail. We disagree.

First, we note that both the Tax Code and the Property Code were enacted as nonsubstantive revisions of existing statutes. See Property Code, ch. 576, 1983 TEX.GEN.LAWS 3475; Tax Code, ch. 389, 1981 TEX.GEN.LAWS 1490. We hold that the codification dates of the respective codes do not control. The enactment dates of the specific statutes, now contained in the codes, are the controlling dates.

■ Section 5.005 of the Property Code was formerly TEX.REV.CIV.STAT. ANN. art. 166a (1965) (repealed 1984) which became effective August 30, 1965. Section 23.56 of the Tax Code was formerly TEX.REV.CIV.STAT.ANN. art. 7174A, sec. 6 (1979) (repealed 1982) which became effective May 31, 1979. See 1965 TEX.GEN. LAWS 1463; 1979 TEX.GEN.LAWS 680. Therefore, Article 7174A was enacted later than Article 166a. Furthermore, even if the general provision of Section 5.005 is the later enactment, we hold that it is not the "manifest intent" that Section 5.005 should prevail over the specific special provision of Section 23.56.

The judgment of the trial court is affirmed.