# CIRCUIT COURT OF THE CITY OF RICHMOND

Commonwealth of Virginia

v.

Joseph C. Fields

September 27, 2007

Case No. CR07M-5388

BY JUDGE WALTER W. STOUT, III

On July 25, 2007, Mr. Fields appeared in Richmond Traffic Court and was convicted of Reckless Driving in violation of Va. Code § 46.2-852. Prior to the Court's assessing the civil remedial fees as required under Va. Code § 46.2-206.1, Defendant's counsel argued that the fees should not be imposed because the statute violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. The case was continued until August 3, 2007 and both sides were ordered to prepare briefs. On August 3, 2007, both parties presented their arguments and the Richmond Traffic Court held that Va. Code § 46.2-206.1 was unconstitutional and did not assess the civil remedial fees on Mr. Fields. This matter is now before this Court pursuant to Va. Code § 16.1-131.1.

The sole issue in this case, as agreed to by the parties, is whether the assessment of civil remedial fees on residents of Virginia, but not on non-residents, violates the equal protection clauses of the Constitutions of the United States and Virginia. The statute involved is Va. Code § 46.2-206.1, and the relevant portions state:

A. The purpose of the civil remedial fees imposed in this section is to generate revenue from drivers whose proven dangerous driving behavior places significant financial burdens upon the Commonwealth. The civil remedial fees established by this section shall be in addition to any other fees, costs, or penalties imposed pursuant to the Code of Virginia.

B. The civil remedial fees established by this section shall be assessed on any resident of Virginia operating a motor vehicle on the highways of Virginia, including persons to whom Virginia driver's licenses, commercial driver's licenses, or learner's permits have been issued pursuant to this title, and persons operating motor vehicles without licenses or whose license has been revoked or suspended.

All statutes enacted by the General Assembly are presumed to be constitutional. *Finn v. Virginia Retirement Sys.*, 259 Va. 144, 153, 524 S.E.2d 125, 130 (2000) (citations omitted). Under the rational basis standard, any challenge must be overruled if there is any reasonable, conceivable state of facts that could provide a rational basis for the classification. Those attacking the rationality of a legislative classification have the burden to negate every conceivable basis that might support it. A strong burden is posed on the proponent of unconstitutionality.

As stated in *F.C.C. v. Beach Communications*, 508 U.S. 307, 113 S. Ct. 2096, 124 L. Ed. 2d 211 (1993):

Whether embodied in the Fourteenth Amendment or inferred from the Fifth, equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification. Where there are plausible reasons for [the legislature's] action, our inquiry is at an end. On rational-basis review, a classification in a statute . . . comes to us bearing a strong presumption of validity and those attacking the rationality of the legislative classification have the burden "to negative every conceivable basis which might support it." Moreover, because we never require a legislature to articulate its reasons for enacting a

statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature. Thus, the absence of legislative facts explaining the distinction "on the record" has no significance in rational-basis analysis. In other words, a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data. Only by faithful adherence to this guiding principle of judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function.

*F.C.C. v. Beach Communications*, 507 U.S. at 313-15 (citations and internal quotation marks omitted).

In this case, the Virginia General Assembly has set forth the purpose of the statute within the statute itself. This gives some direction to our inquiry but does not foreclose speculation of what was intended. The standard of reasonableness of the classification is discussed in *Estes Funeral Home v. Adkins*, 266 Va. 297, 586 S.E.2d 162 (2003):

> The reasonableness of a classification rests on "whether it embraces all of the classes to which it relates." The basis of a classification "must have a direct relation to the purpose of the law, and must present a distinction which renders one class, in truth, distinct or different from another class." Stated differently, equal protection requires only that "the classification rest on real and not feigned differences, that the distinction have some relevance to the purpose for which the classification is made, and that the different treatments not be so disparate, relative to the difference in classification, as to be wholly arbitrary."

*Estes Funeral Home v. Adkins*, 266 Va. at 304 (2003) (citations omitted).

The defendant argues that Va. Code § 46.2-206.1 carves out Virginia residents to be assessed civil remedial fees and fails to assess these same fees against non-residents who have been convicted of identical offenses. The dangerous driving behavior of each resident and non-resident places the same financial burden on the Commonwealth. Therefore, there is no rational difference in being a resident or non-resident dangerous driver.

The emphasis by the defendant is placed on the financial burden placed on the Commonwealth by both resident and non-resident drivers. But this is not the only purpose stated in the statute by the legislature.

The purpose of the statute is to generate revenue. This is the ultimate purpose, as the rest of the stated purpose only dictates from whom revenue is to be collected. Were the purpose to punish dangerous drivers for their violations, then the legislature would have increased fines. The distinction between resident and non-resident drivers would then be difficult to differentiate.

But the purpose is not to punish, but to raise revenue through a civil fee. "The basis of a classification must have a direct relation to the purpose of the law." *Estes Funeral Home*, 266 Va. at 304 (2003). So a different set of inquiries is reasonable than if the purpose of the statute were to punish.

The defendant relies on the *Williams v. Vermont*, 472 U.S. 14, 105 S. Ct. 2465, 86 L. Ed. 2d 11 (1985), case to support his claim that the distinction in Va. Code § 46.2-206.1 violates the equal protection clause. In *Williams*, the United States Supreme Court struck down a Vermont statute that imposed a use tax on the registration of motor vehicles in Vermont that were purchased out of state. (If the motor vehicle was purchased in state, the use tax was exempted if a Vermont sales tax was paid on the car.) The classification created by the challenged statute differentiated between Vermont residents who were Vermont residents at the time they purchased the vehicle in another state and Vermont residents who were not Vermont residents when they purchased the vehicle in another state.[1] Finding that residence at the time of the vehicle purchase was a wholly arbitrary means to distinguish between present Vermont registrants, the Supreme Court struck down the Vermont statute under a rational basis review. The Supreme Court stated:

> Having registered a car in Vermont they are similarly situated for all relevant purposes. Each is a Vermont resident, using a car in Vermont, with an equal obligation to pay for the maintenance and improvement of Vermont's roads. The purposes of the statute would be identically served, and with an identical burden, by taxing each. The distinction between them bears no relation to the statutory purpose.

---

[1] The statute allowed those registrants who were Vermont residents at the time they purchased the vehicle to get a credit for certain sales taxes they paid on the vehicle in the other state. However, registrants who were not Vermont residents at the time they purchased their vehicle in another state were not granted the credit and were forced to pay the full use tax.

*Williams v. Vermont*, 472 U.S. at 23-24.

The instant case is clearly distinguishable from *Williams*. Here, Va. Code § 46.2-206.1 distinguished between Virginia residents and non-Virginia residents, unlike the two groups of Vermont residents in *Williams*. It follows that Virginia residents are not similarly situated for all relevant purposes from non-Virginia residents. Further, non-Virginia residents do not have the same burden to pay for the maintenance and improvement of Virginia roads that Virginia residents do, as Virginia residents certainly have a higher use of the roads and therefore a higher obligation to maintain them.

The case of *Leonard v. Thornburg*, 507 Pa. 317, 489 A.2d 1349 (1985), addresses the responsibilities of residents and non-residents for tax purposes in Philadelphia. In *Leonard*, residents of Philadelphia who worked in the city were taxed at a higher rate than non-Philadelphia residents who worked in the city. The Pennsylvania Supreme Court found that this distinction was not arbitrary because resident wage earners used the services of Philadelphia to a greater extent than non-residents. While not specifically proven, the Court found the logic convincing.

Non-residents do not have the same obligation to support Virginia roads because they do not use the roads with the same frequency as Virginia residents. While the statute talks about costs of dangerous drivers, the purpose of the statute is to raise revenue for the Highway Maintenance and Operating Fund. This could be a reasonable rational basis for the class distinction.

In passing the full statute, the legislature included paragraph K, which states:

> K. Funds collected through the imposition of the fees as provided for in this section shall be used to pay the Department's cost in imposing and collecting such assessments as provided in the general appropriation act, and any remainder shall be deposited into the Highway Maintenance and Operating Fund.

This is strong evidence that the legislature was very aware of the cost of imposing and collecting these fees. They state the cost of collection in such strong terms that they take out the costs first and only the remainder goes into the Highway Maintenance and Operating Fund. Being aware of the cost of collection, they reasonably may have felt that the collection of fees 14 and 26 months after conviction of non-resident defendants was not economically productive. This certainly is a rational basis on which to differentiate the classes where the purpose of the statute is to raise revenue for the Highway Maintenance and Operating Fund.

The manner that the fees are collected provides some support for this determination. In sections E and F of Va. Code § 46.2-206.1, the General Assembly sets forth the three annual payments that must be made under the statute. The first payment must be made to the court upon conviction, the second payment must be made within fourteen months to the DMV, and the third payment must be made within twenty-six months to the DMV. Thus, after the initial payment to the court, DMV is charged with the responsibility of notifying every assessed person of their second installment and their third installment due under the statute. Because of the highly mobile nature of today's society, many out-of-state drivers assessed with these fees would be harder to locate than their in-state counterparts, resulting in higher collection costs. Due to the increased time and multiple collections that are required, it is conceivable to see how the General Assembly may have thought that including non-resident drivers would thwart the goal of the statute, which is to raise revenue.

Under the statute, the penalty for failure to pay the civil remedial fees is the suspension of the assessed person's Virginia driver's license, or their privilege to drive in Virginia. This is the primary enforcement tool available to the courts and the DVM to encourage payment of the fees. However, Virginia cannot get a non-resident driver's home state to suspend his license for failure to pay the civil remedial fee unless their home state had a substantially similar civil remedial fee.

The Driver License Compact, a compact joined by 39 states, including Virginia and the District of Columbia, supports reciprocity for recognition and suspension of driver's licenses across state lines. Under Va. Code § 46.2-483, Article IV outlines the effect of a conviction for purposes of reciprocity:

> (a) The licensing authority in the home state, for the purposes of suspension, revocation or limitation of the license to operate a motor vehicle, shall give the same effect to the conduct reported . . . as it would if such conduct had occurred in the home state. . . .
>
> (c) If the laws of a party state do not provide for offenses or violations denominated or described in precisely the words employed in subdivision (a) of this article, such party state shall construe the denominations and descriptions appearing in subdivision (a) hereof as being applicable to and identifying those offenses or violations of a substantially similar nature and the laws of such party state shall contain such provision as may be necessary to ensure that full force and effect is given to this article.

Thus, unless the non-resident driver's home state had civil remedial fees of a "substantially similar nature" to those in Virginia, then Virginia could not get the home state to revoke that non-resident's drivers license. This would create a substantial problem in enforcing the fees on the non-resident drivers. Because non-residents would not be punished the same way resident drivers would be punished, they would accordingly not have the same urgency or motivation to pay the fees as resident drivers.

Defendant focused on the "burden" created by resident "dangerous" drivers and non-resident "dangerous" drivers in his argument. Citing the stated purpose of the statute to "generate revenue from drivers whose proven dangerous driving behavior places significant financial burdens upon the Commonwealth," he stated that the burden imposed by resident "dangerous" drivers was no different from the burden imposed by non-resident "dangerous" drivers. Because there was no difference in the burden imposed, there was no reason why the Commonwealth should generate revenue solely from residents and exclude non-residents.

However, by focusing on the burden imposed, Defendant's counsel focuses on a punitive purpose for this statute instead of the statute's revenue generating purpose. As this Court has stated, the legislature could rationally conclude that the revenue generating purpose of the statute could more successfully be met by imposing the fees only on Virginia residents.

Our inquiry in this case is not whether the challenged statute is good legislation. Today's inquiry asks whether the classification between resident motorists and non-resident motorists under the statute is rationally related to the legitimate Commonwealth interest of generating revenue to improve Virginia highways. This Court finds that there are conceivable rational bases for this legislation's classification and holds Va. Code § 46.2-206.1 constitutional. The defendant has not met his heavy burden to negate "every conceivable basis" that supports the classification. This matter is remanded to the Richmond General District Court pursuant to Va. Code § 16.1-131.1.