**Greg R. BARRINGER and Judith M. Barringer, Plaintiffs,**

v.

**Michael D. GRIFFES, Defendant.**

**Civ. A. No. 91–231.**

United States District Court,
D. Vermont.

Sept. 2, 1992.

Norman C. Williams, Gravel & Shea, Jerome F. O'Neill, O'Neill & Crawford, Burlington, Vt., for plaintiffs.

William E. Griffin, Chief Asst. Atty. Gen., Vermont Atty. Gen.'s Office, Montpelier, Vt., for defendant.

## FINDINGS OF FACT, OPINION AND ORDER

PARKER, Chief Judge.

In 1988, plaintiffs, then Connecticut residents, purchased a 1988 Mazda automobile, registered it in Connecticut, and paid the state sales tax of 7.5 percent of the car's value. In 1990, plaintiffs moved to Vermont, bringing the Mazda with them. To register the vehicle in Vermont, as they wish to do, they are required by Vermont law to pay a use tax of five percent of the vehicle's cost.[1] Plaintiffs have refused to pay the tax, claiming that it violates the Commerce Clause of the United States Constitution. On August 27, 1991, they brought suit under 42 U.S.C. § 1983 seeking a declaration that Vermont's motor vehicle use tax is unconstitutional and a preliminary and permanent injunction restraining defendant, the Vermont Commissioner of Motor Vehicles, from enforcing the statute.

This court initially found that it lacked jurisdiction over the matter by virtue of the Tax Injunction Act, 28 U.S.C. § 1341. *Barringer v. Griffes*, Civ. No. 91–231 (D.Vt. Sept. 4, 1991). On May 18, 1992, that decision was vacated by the Second Circuit Court of Appeals on the ground that the Tax Injunction Act did not divest the federal court of jurisdiction in this case because the judicial remedy available to plaintiffs in Vermont state courts "cannot fairly be said to be plain." *Barringer v. Griffes*, 964 F.2d 1278, at 1284. (2d Cir.1992). The matter was accordingly remanded and defendant subsequently filed its answer.

A hearing on plaintiff's motion for preliminary injunction was held on August 14, 1992, at which the court heard testimony of Judith Barringer and Greg Barringer as well as arguments of counsel on the issues raised by both the motion for preliminary injunction and the merits of the action. The parties agreed no further evidence or discovery was needed and the motion accordingly was consolidated with a trial on

---

**1.** See 32 V.S.A. § 8903, discussed in Part I of this Opinion, *infra.*

the merits pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure.[2]

## I.

The statutory scheme is set forth in 32 V.S.A. Ch. 219. Anyone who registers a car in Vermont must pay a one-time purchase or use tax on the vehicle. 32 V.S.A. § 8903.[3] A nonresident who merely buys but does not register a vehicle in Vermont is not subject to the tax. The tax is imposed on cars purchased and registered in Vermont (the purchase tax) as well as cars that have been purchased and registered in other states prior to registration in Vermont (the use tax). § 8903(a), (b). However, a Vermont resident who buys a car in another state, without registering it there (or in a third state) before bringing it back to Vermont, may receive a credit against the Vermont use tax for any purchase or use tax paid to the other state if that state would afford a credit for taxes paid to Vermont in similar circumstances. § 8911(9);[4] *Williams v. State*, 156 Vt. 42, 46 n. 3, 589 A.2d 840 (1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 81, 116 L.Ed.2d 54; —— U.S. ——, 112 S.Ct. 590, 116 L.Ed.2d 614 (1991). The credit is not available to those (like plaintiffs) who are not residents of Vermont at the time a vehicle is purchased; nor is it available to Vermont residents who first register a vehicle in another state before registering it in Vermont.[5]

**2.** At the close of the hearing, and by written motion filed subsequently, plaintiffs sought to amend their complaint, Fed.R.Civ.P. 15(a), to add a claim under the Privileges and Immunities Clauses of Article IV, § 2 and the Fourteenth Amendment of the Constitution. In the court's view, this attempt to add a new theory of relief comes too late, in light of plaintiffs' otherwise urgent desire to obtain immediate relief, defendant's willingness to consolidate the preliminary and merits hearings, and the readiness of the Commerce Clause issues for decision. See *State Trading Corp. of India v. Assuranceforeningen Skuld,* 921 F.2d 409, 417–18 (2d Cir. 1990). The motion is therefore DENIED.

**3.** § 8903(a) imposes "upon the purchase in Vermont of a motor vehicle by a resident a tax...." § 8903(b) imposes "upon the use within this state a tax ... except no use tax shall be payable hereunder if the tax imposed by subsection (a) above has been paid...." § 8903(c) provides that "[t]he Vermont registration or transfer of Vermont registration of a motor vehicle shall be conclusive evidence that the purchase and use tax applies except as provided in section 8911 of this title [specifying certain classes of vehicles exempt from the tax]." § 8905 requires payment of the tax "at the time of first registering or transferring a registration." Read together, these sections impose the purchase or use tax upon anyone registering a car in the state, except those excluded under § 8911.

§ 8903 was amended by the Vermont legislature, effective July 1, 1991, to raise the tax rate from four percent to five percent of the vehicle's cost. 1991 Vt. Laws No. 73. Unfortunately, the editorial comments in Title 32 of Vermont Statutes Annotated § 8903 (1991) appear to state incorrectly that the amendment takes effect only on July 1, 1993. This confusion may stem from the fact that Public Act No. 73, § 2, provides: "Effective July 1, 1993, the rate of the motor vehicle purchase and use tax shall revert to four percent unless the increase in the rate of this tax, enacted herein, is further extended by act of the general assembly." 1991 Vt. Laws No. 73, § 2.

**4.** That section provides in part:

The tax imposed by this chapter shall not apply to:

．　　．　　．　　．　　．

(9) pleasure cars acquired outside the state by a resident of Vermont on which a state sales or use tax has been paid by the person applying for a registration in Vermont, providing that the state or province collecting such tax would grant the same pro-rata credit for Vermont tax paid under similar circumstances. If the tax paid in another state is less than the Vermont tax the tax due shall be the difference.

**5.** It is not clear from the record before the court what circumstances would compel a Vermont resident to register a pleasure car in another state. In Vermont, only residents are required to register pleasure cars in the state. 23 V.S.A. § 301. If that provision is uniform throughout the Union, a Vermont resident living temporarily in another state would likely not be inclined to register a car in that state. The dissenters in *Williams v. Vermont,* 472 U.S. 14, 105 S.Ct. 2465, 86 L.Ed.2d 11 (1985), which held the motor vehicle purchase and use tax statute facially discriminatory, labelled such a person a "phantom beneficiary" of the § 8911(9) exemption. *Id.* at 31, 105 S.Ct. at 2475 (Blackmun, J., dissenting).

The equal protection problem addressed in *Williams v. Vermont* is that § 8911(9) on its face provides a credit to any Vermont resident who purchases a car in a reciprocating state and subsequently registers it in Vermont, regardless whether he or she first registered the car elsewhere. The plaintiffs in *Williams,* like the Bar-

The gravamen of plaintiffs' complaint is that the credit provided in § 8911(9) is not available to them. The State of Vermont imposes a cost on the Barringers for moving to Vermont with a used car: they must pay a second tax upon registering the Mazda in Vermont. From this undisputed factual premise, plaintiffs argue that the tax violates the Commerce Clause because it creates an impermissible incentive for people moving to Vermont to purchase their vehicles in Vermont. They contend further that the tax is not "fairly apportioned" and exposes interstate commerce to multiple burdens not borne by local commerce. With these propositions I disagree.

## II.

■ Article I, section 8 of the Constitution vests in the federal Congress the power "[t]o regulate commerce … among the several States." The issue presented here is the scope of what is often called the "dormant Commerce Clause"; that is, whether an exercise of state taxing authority contravenes the negative implications of the constitutional grant of power to Congress to regulate commerce. *Quill Corp. v. North Dakota*, — U.S. —, —, 112 S.Ct. 1904, 1911, 119 L.Ed.2d 91 (1992). "It long has been established that the Commerce Clause of its own force protects free trade among the States. One aspect of this protection is that a State 'may not discriminate between transactions on the basis of some interstate element.' That is, a State may not tax a transaction or incident more heavily when it crosses state lines than when it occurs entirely within the State." *Armco Inc. v. Hardesty*, 467 U.S. 638, 642, 104 S.Ct. 2620, 2622, 81 L.Ed.2d 540 (1984) (quoting *Boston Stock Exchange v. State Tax Comm'n*, 429 U.S. 318, 332 n. 12, 97

S.Ct. 599, 608 n. 12, 50 L.Ed.2d 514 (1977); other citations omitted). Merely because an activity affects or is affected by interstate commerce, however, does not by itself foreclose a state's power to tax that activity. See *Allied–Signal, Inc. v. Director, Division of Taxation*, — U.S. —, —, 112 S.Ct. 2251, 2258, 119 L.Ed.2d 533 (1992).

■ In *D.H. Holmes Co. v. McNamara*, 486 U.S. 24, 30, 108 S.Ct. 1619, 1623, 100 L.Ed.2d 21 (1988), the Supreme Court reiterated the "four-part formulation … used to evaluate the validity of state taxes vis-a-vis the Commerce Clause": A state tax does not offend the Constitution if it (1) is applied to an activity that has a substantial nexus with the taxing state, (2) is fairly apportioned, (3) does not discriminate against interstate commerce, and (4) is fairly related to benefits provided by the state. 486 U.S. at 30; see *Complete Auto Transit Inc. v. Brady*, 430 U.S. 274, 287, 97 S.Ct. 1076, 1083, 51 L.Ed.2d 326 (1977).

Vermont's motor vehicle use tax unquestionably satisfies the first and fourth criteria (and plaintiffs do not contend otherwise): the tax is imposed when a person seeks to register and drive a car in Vermont, and it funds services provided by Vermont—the maintenance and improvement of the state's highways, 32 V.S.A. § 8901—which make driving in the state possible and pleasurable. Plaintiffs challenge the tax as failing to satisfy the second and third criteria: fair apportionment and discrimination against interstate commerce.

The fair apportionment issue is not troubling as it is largely irrelevant in the present context. Among "the basic principles

---

ringers, had registered cars in other states prior to moving to Vermont, but were ineligible for the credit. The Supreme Court held that the scheme arbitrarily favors Vermont residents who purchase and register cars elsewhere over similarly situated nonresidents. *Id.* at 22–24, 105 S.Ct. at 2471–2472. A regulation subsequently promulgated by the Commissioner limits the availability of the § 8911(9) credit to Vermont residents who have not previously registered the vehicle in the state where it was acquired or in any other state, thus imposing

identical burdens on Vermont residents similarly situated to the *Williams* plaintiffs and thereby curing the constitutional defect identified by the Court. See Agency of Transportation, Department of Motor Vehicles, Rule 86–28–E(1)(d) ("Motor Vehicle Purchase and Use Tax") (July, 5, 1986); *Williams v. State*, 156 Vt. at 46 n. 3, 589 A.2d 840. In the present matter, of course, I am constrained to construe § 8911(9) in accordance with Rule 86–28–E and as recognized by the Vermont Supreme Court in *Williams v. State*.

for state taxation of the income of a business operating in interstate commerce ... [is] that 'the entire net income of a corporation, generated by interstate as well as intrastate activities, may be fairly apportioned among the States for tax purposes by formulas utilizing in-state aspects of interstate affairs.' " *Exxon Corp. v. Department of Revenue of Wisconsin*, 447 U.S. 207, 219, 100 S.Ct. 2109, 2118, 65 L.Ed.2d 66 (1980) (quoting *Northwestern States Portland Cement Co. v. Minnesota*, 358 U.S. 450, 460, 79 S.Ct. 357, 363, 3 L.Ed.2d 421 (1959)); see *Allied–Signal, Inc. v. Director, Division of Taxation*, —— U.S. at ——–——, 112 S.Ct. at 2258–59. Vermont's motor vehicle purchase and use tax does not tax interstate activity at all. The tax, calculated as a percentage of the "taxable cost" or depreciated value of the vehicle at the time of registration in Vermont, is on the use of the car in Vermont only, not in any other state. There is no comparison, for example, to *J.D. Adams Manufacturing Co. v. Storen*, 304 U.S. 307, 311–12, 58 S.Ct. 913, 915–16, 82 L.Ed. 1365 (1938), principally relied upon by plaintiffs, where the Court struck down Indiana's gross receipts tax on fair apportionment grounds because the tax was imposed on income from the sale of goods both in state and out of state. Indiana taxed local manufacturers' sales receipts from both local and interstate sales without apportionment; Vermont taxes only the local use of automobiles. No apportionment is needed.

Plaintiffs contend, however, that in *D.H. Holmes Co. v. McNamara*, 486 U.S. 24, 108 S.Ct. 1619, the Supreme Court made it "clear that a tax credit for taxes paid in other states is constitutionally required for sales and use taxes." Plaintiffs' Memorandum of Law in Support of Motion for Preliminary Injunction, at 6. In that case, applying the four-part test noted above, the Court upheld the imposition of Louisiana's use tax on a Louisiana corporation's distribution to Louisiana customers of catalogs designed and printed out of state. Addressing the apportionment requirement, the Court stated that "[t]he Louisiana taxing scheme is fairly apportioned, for it provides a credit against its use tax for sales taxes that have been paid in other States." *Id.* at 31. Because of the credit, there could be no danger of two or more states taxing the same interstate activity—the shipping of catalogs from one state to customers in another—without a fair apportionment of the income generated by such activity. Plaintiffs seek to draw an analogy between the catalogs in *D.H. Holmes* and their 1988 Mazda, but any resemblance is deceptive. Although the tax in *D.H. Holmes* is denominated a "use" tax, the Court was careful to note that Louisiana assessed the tax on "the *distribution* of the catalogs" rather than on "the mere presence of goods within the State," *id.* at 31 (emphasis in original), and that the trial court had "determined that the distribution of the catalogs in Louisiana was 'intended for the use of D.H. Holmes in increasing its sales to potential customers who are residents of Louisiana.' " *Id.* at 28 (quoting Louisiana Civil District Court ruling). In the present case, by contrast, plaintiffs are subject to a tax only for the use of their car within Vermont, not for its distribution or importation from another state to customers in state, and the car is not intended to generate income in a business enterprise. Plaintiffs have simply not engaged in any interstate commerce in need of fair apportionment.

The more significant question is whether the use tax is discriminatory in the relevant sense. Pinning a definition on the term is difficult as its meaning has shifted with the evolution of the Supreme Court's doctrine over the decades. See *Quill Corp. v. North Dakota*, —— U.S. at ——–——, 112 S.Ct. at 1911–12. It is probably an understatement to say that the Court's dormant Commerce Clause jurisprudence, particularly as it relates to limits on state taxation powers, is unpredictable. See, e.g., *id.* —— U.S. at ——, 112 S.Ct. at 1915 (acknowledging that Court's "law in this area is something of a 'quagmire' "); *Tyler Pipe Industries, Inc. v. Washington State Dept. of Revenue*, 483 U.S. 232, 259–60, 107 S.Ct. 2810, 2826, 97 L.Ed.2d 199 (1987) (Scalia, J. dissenting) (questioning historical

and theoretical foundations of doctrine: "The fact is that in the 114 years since the doctrine of the negative Commerce Clause was formally adopted as holding of this Court ... our applications of the doctrine have, not to put too fine a point on the matter, made no sense."). Yet, even in its most expansive application of the doctrine, the Court has never invalidated a state tax scheme sharing the relevant features of Vermont's motor vehicle purchase and use tax.

The Court has long held that a use tax does not violate the Commerce Clause merely because it is imposed on goods imported from other states. See *Henneford v. Silas Mason Co.*, 300 U.S. 577, 582–83, 57 S.Ct. 524, 526–27, 81 L.Ed. 814 (1937). The question raised here is whether the fact that a sales or use tax was imposed on the property by another jurisdiction prior to its importation into Vermont, with no credit being given against the use tax, renders the tax unconstitutional. On occasion the Court has cited the availability of a credit against a use tax for sales taxes previously paid as a factor supporting the constitutionality of the tax. See, e.g., *D.H. Holmes Co.*, 486 U.S. at 31, 108 S.Ct. at 1623. But the issue of the necessity of such a credit has not been decided. Indeed, in 1985 the Court noted that it "has expressly reserved the question whether a State must credit a sales tax paid to another State against its own use tax." *Williams v. Vermont*, 472 U.S. 14, 21–22, 105 S.Ct. 2465, 2470–2471, 86 L.Ed.2d 11 (1985) (citing *Southern Pacific Co. v. Gallagher*, 306 U.S. 167, 172, 59 S.Ct. 389, 391, 83 L.Ed. 586 (1939)).

■ Whatever reasons of sound policy might support the credit sought by plaintiffs, this court is not persuaded that the credit is mandated by the Commerce Clause. The Supreme Court has not only "been reluctant to interfere with legislative policy decisions in this area," *id.* at 22, 105 S.Ct. at 2471; it has also been reluctant to compel states, in enacting their own tax laws, to examine "the tax burdens imposed by other States." *Tyler Pipe Industries*, 483 U.S. at 247, 107 S.Ct. at 2819. Thus, although *Southern Pacific Co. v. Gallagher* did not decide the precise issue of the necessity for crediting a foreign tax paid, as that question did not arise "by evidence, finding or assignment of error," 306 U.S. 167, 172, 59 S.Ct. 389, 391 (1939), the Court nevertheless upheld a California use tax which made no provision for credit for taxes already paid to foreign states, noting that "California's exaction for the distribution of tangible personal property is the same, whether purchased within or without her borders...." *Id.* See also *Halliburton Oil Well Cementing Co. v. Reily*, 373 U.S. 64, 76, 83 S.Ct. 1201, 1207, 10 L.Ed.2d 202 (1963) (Brennan, J., concurring) (states have no duty "to ensure absolute equality of economic burden as between sales and use taxpayers"; Court has sustained tax schemes even where "as a matter of economic fact the out-of-state use taxpayer is likely ultimately to incur a heavier burden than his in-state counterpart, the sales taxpayer"). "'The immunities implicit in the Commerce Clause and the potential taxing power of a State can hardly be made to depend, in the world of practical affairs, on the shifting incidence of the varying tax laws of the various States at a particular moment.'" *Armco Inc. v. Hardesty*, 467 U.S. at 645 n. 8, 104 S.Ct. at 2624 n. 8 (quoting *Freeman v. Hewit*, 329 U.S. 249, 256, 67 S.Ct. 274, 278, 91 L.Ed. 265 (1946)).[6]

---

**6.** By the same token, where a state tax facially discriminates between in-state and out-of-state enterprises, the state is not permitted to justify the tax by showing that, when viewed in conjunction with another state's tax scheme, the tax is fair. In *Armco Inc. v. Hardesty*, for example, the Court struck down West Virginia's wholesale receipts tax which was imposed on out-of-state manufacturers who sold in West Virginia but exempted local manufacturers, even though the local manufacturers were subject to a much higher manufacturing tax imposed by the state.

467 U.S. at 642–43, 104 S.Ct. at 2622–23. One ground for invalidating the tax was that Ohio (whence Armco hailed) or any other state might impose a manufacturing tax comparable to West Virginia's: "then Armco and others from out of State will pay both a manufacturing tax and a wholesale tax while sellers resident in West Virginia will pay only the manufacturing tax." *Id.* at 644, 104 S.Ct. at 2623. The Court stated that a rule requiring Armco "to prove actual discriminatory impact on it by pointing to a State that imposes a manufacturing tax that

The fact that plaintiffs are required to pay a second tax on the same automobile in order to register it in Vermont is insufficient by itself to show that the tax interferes with or discriminates against interstate commerce. In all the cases cited by plaintiffs, more must be shown. Thus, Vermont's use tax would be unconstitutional if it imposed without sufficient justification[7] a burden on interstate enterprises greater than the burden imposed on local business operations. See, e.g., *Chemical Waste Management, Inc. v. Hunt,* — U.S. ——, —— – ——, 112 S.Ct. 2009, 2013–14, 119 L.Ed.2d 121 (1992) (invalidating Alabama's hazardous waste disposal fee on wastes generated outside state and disposed in state, which did not apply to wastes generated within state); *Tyler Pipe Industries,* 483 U.S. at 253, 107 S.Ct. at 2823 (invalidating Washington's manufacturing tax on locally made products sold to out-of-state customers which exempted locally made products sold to local customers); *Armco Inc. v. Hardesty,* 467 U.S. at 642, 104 S.Ct. at 2622 (invalidating West Virginia's wholesale gross receipts tax which exempted local manufacturers, even though local manufacturers paid a higher manufacturing tax); *Boston Stock Exchange v. State Tax Comm'n,* 429 U.S. 318, 331, 97 S.Ct. 599, 607, 50 L.Ed.2d 514 (1977) (invalidating New York transfer tax on securities transactions which taxed transactions involving out-of-state sale more heavily than those involving in-state sale); *Halliburton Oil Well,* 373 U.S. at 67, 71–73, 83 S.Ct. at 1202, 1204–1205 (Louisiana use tax collected only on local consumption of goods purchased outside taxing state violates Commerce Clause in the absence of adequate justification where no complementary sales tax is imposed on equivalent locally sold goods).

The motor vehicle use tax does not impose such discriminatory burdens. To the contrary, Vermont imposes the *same* tax on using a car in this state (or, more precisely, it employs the same formula for calculating the tax) whether the car is purchased here or elsewhere. The only arguably relevant exception is that the state permits a credit to the Vermont resident who already paid a sales or use tax on the vehicle in a reciprocating state without having registered it there. § 8911(9).[8] The primary purpose of the exemption, however, is to remove the disincentive for Vermonters to buy cars out of state, thus *encouraging* interstate commerce. That purpose would not, of course, be served by exempting persons like plaintiffs who are not Vermont residents at the time of purchase. "[T]he credit facilitates the interstate purchase of automobiles, and helps ensure that a car buyer is not paying for the use of two States' roads when using only one." *Williams v. Vermont,* 472 U.S. at 30, 105 S.Ct. at 2475 (Blackmun, J., dissenting). "A taxing act is not invalid because its exemptions are more generous than the state would have been free to make them by exerting the full measure of her power." *Henneford,* 300 U.S. at 587, 57 S.Ct. at 529.

Plaintiffs also assert that the motor vehicle tax provides an unconstitutional incentive for nonresidents moving to Vermont to

---

results in a total burden higher than that imposed on Armco's competitors in West Virginia … is not the test." *Id.* The constitutionality of the challenged tax cannot "depend on the shifting complexities of the tax codes of 49 other States." *Id.* at 645, 104 S.Ct. at 2624.

**7.** Even where a plaintiff can establish that a state tax discriminates against interstate commerce, the state may "show that 'the *discrimination* is demonstrably justified by a valid factor unrelated to economic protectionism.'" *Chemical Waste Management, Inc. v. Hunt,* — U.S. ——, ——, 112 S.Ct. 2009, 2015, 119 L.Ed.2d 121 (1992) (quoting *Wyoming v. Oklahoma,* — U.S. ——, ——, 112 S.Ct. 789, 801, 117 L.Ed.2d 1 (1992)) (emphasis in *Chemical Waste*). The state in the present case is not put to this test as the plaintiffs have failed to meet their initial burden.

**8.** "Since all States apparently forgo payment of their sales tax by out-of-state purchasers of automobiles, see *J.C. Penney Co. v. Hardesty,* 164 W.Va. 525, 538–539, 264 S.E.2d 604, 613 (1980), § 8911(9) might well be entirely superfluous, as no out-of-state purchaser will ever be required to pay a sales tax which could be credited against Vermont's use tax pursuant to § 8911(9)." *Williams v. Vermont,* 472 U.S. at 36 n. 5, 105 S.Ct. at 2478 n. 5 (Blackmun, J., dissenting).

 

defer buying a car until they arrive in Vermont. They claim that "this system influences purchasing decisions in favor of Vermont businesses." Plaintiffs' Memorandum of Law in Support of Motion for Preliminary Injunction, at 10. The tax can create an incentive to defer buying a car until after completing a move to Vermont, but it does *not* necessarily create an incentive to buy the car in Vermont. In virtually all instances, upon assuming residency in Vermont, a person is burdened the same no matter where the car is purchased, paying the Vermont purchase tax upon buying and registering a car in Vermont, the Vermont use tax after buying a car in another state which did not collect a sales tax, or no tax to Vermont after buying a car in a reciprocating state which did collect an equivalent tax.[9] As a practical matter, a person may be more inclined to purchase a car within the state after moving here, but that is a consequence of the conveniences of buying near one's residence, not of Vermont's tax system.

The tax scheme also may provide an incentive to a Vermont resident who purchases a vehicle in a reciprocating state with the intention of bringing it back to Vermont to not first register the vehicle in the other state.[10] With foresight, the Vermonter would want to forego the foreign-state registration so as to remain eligible for the § 8911(9) credit. That incentive is not present for a person like the plaintiffs, who purchases a car in another state prior to obtaining Vermont residency. Nonresidents may not take the credit provided in § 8911(9).[11] But it bears repeating that the tax scheme does not generally provide an incentive to *purchase* a vehicle in Vermont rather than in other states—and thus, contrary to plaintiffs' assertions, does not favor local commercial interests at the expense of foreign-state or interstate interests. The incentive relates only to the registration of vehicles: residents may get a credit if they buy a car out of state only if they do not first register the car out of state.

The court concludes that Vermont's motor vehicle purchase and use tax, on its face and as applied to plaintiffs, does not offend the Commerce Clause of the United States Constitution. Accordingly, plaintiffs' request for declaratory and injunctive relief is DENIED and judgment is entered for defendant.

---

**9.** In theory, the system would require payment of the use tax by a Vermonter who purchases a car in a *non*reciprocating state which *does* levy a sales tax on out-of-state purchasers. A person contemplating such a purchase would have an incentive to buy the car in Vermont in order to avoid paying two taxes. Plaintiffs have not argued (and it is doubtful they have standing to do so) that this incentive renders the use tax infirm under the Commerce Clause. In any event, the record is entirely insufficient to support a conclusion that such an incentive, which follows logically from the structure of Vermont's tax scheme if never in practice, imposes any burden on interstate commerce. The Supreme Court this term noted that its recent cases have "emphasized the importance of looking past 'the formal language of the tax statute [to] its practical effect.'" *Quill Corp. v. North Dakota,* —— U.S. at ——, 112 S.Ct. at 1912 (quoting *Complete Auto,* 430 U.S. at 279, 97 S.Ct. at 1079).

**10.** Again, this incentive may exist more in theory than practice. See note 5, *supra.*

**11.** The court states no view as to whether the disparate status accorded residents and nonresidents who buy cars in other states without registering them there prior to registering them in Vermont—only the former are entitled to the credit—comports with the Equal Protection Clause of the Fourteenth Amendment. See *Williams v. Vermont,* 472 U.S. at 19 n. 4, 105 S.Ct. at 2469 n. 4 (identifying but not reaching identical issue). Plaintiffs have not asserted this claim and they have no standing to do so, since they registered their vehicle in Connecticut prior to moving to Vermont. As noted above, *supra* note 5, the Supreme Court's concern in *Williams v. Vermont* related to the statute's facially disparate treatment of residents and nonresidents who *registered* cars elsewhere prior to registering them in Vermont. 472 U.S. 14, 105 S.Ct. 2465.