**Greg R. BARRINGER and Judith M. Barringer, Plaintiffs–Appellants,**

v.

**Michael D. GRIFFES, Defendant– Appellee.**

No. 857, Docket 92–9062.

United States Court of Appeals, Second Circuit.

Argued Feb. 10, 1993.

Decided Aug. 9, 1993.

Norman Williams, Burlington, VT (Gravel and Shea, Jerome F. O'Neill, O'Neill and Crawford, of counsel), for plaintiffs-appellants.

William E. Griffin, Asst. Atty. Gen. for State of Vt., Montpelier, VT (Jeffrey L. Am-

estoy, Atty. Gen. for State of Vt., of counsel), for defendant-appellee.

Before: VAN GRAAFEILAND, KEARSE and CARDAMONE, Circuit Judges.

CARDAMONE, Circuit Judge:

Appellants on this appeal wanted to register and operate an automobile in Vermont that they had purchased in another state. Vermont's motor vehicle tax scheme imposes a use tax on automobiles; at the same time it grants a credit against the use tax for any sales tax paid to Vermont. Due to the credit, most Vermonters never have to pay the use tax. Non-residents moving to Vermont find themselves in quite a different situation. They are not credited against the use tax for any sales tax they paid in their former state of residence. Instead, they might pay a sales tax in the state where they previously lived and, in addition, Vermont's use tax. We are asked to decide whether Vermont's attempt to tax the use of an automobile brought from Connecticut, where a sales tax was paid on it, places such a burden on interstate commerce as to render Vermont's use tax invalid as in contravention of the Commerce Clause.

Whenever a court sets sail into the sea of the Interstate Commerce Clause, it should mind which way the wind blows. It was early believed that the Commerce Clause, by its own force, limited the state's authority to tax commerce. Later it was thought the Clause only granted Congress authority to pass legislation in this field, and that the function of the Supreme Court was limited to invalidating state laws contrary to congressional enactments. See Walter Hellerstein, *State Taxation of Interstate Business: Perspectives on Two Centuries of Constitutional Adjudication*, 41 Tax Law. 37, 41 (1987) [Hellerstein, *State Taxation* ]. Dealing with these competing approaches took the Supreme Court along one tack until in *Cooley v. Board of Wardens*, 53 U.S. (12 How.) 299, 13 L.Ed. 996 (1851), it came about, and began a different tack. There it ruled that those aspects of commerce inherently national in character were subject to Congress' single, uniform law; those aspects of commerce that were local in character, demanding diverse approaches, were left to the states to legislate. *Id.* at 319.

Carried along by these changing winds of doctrine, the Supreme Court then resolved Commerce Clause cases by drawing various distinctions. In different periods, for example, the Court has examined the "national" or "local" nature of a state's tax, whether a state enacted a "direct" or "indirect" tax on interstate commerce, whether a state tax discriminated against interstate commerce in its practical operation, and whether the state tax simply made interstate commerce pay its fair share of the costs of state government or whether it exacted more than its fair share. These analytical tools were among those used to determine the constitutionality of a state tax on interstate transactions. The changes in direction evolving from the emphasis accorded these varying doctrines make plain that to set our sails safely for a favoring breeze in this sea, it is necessary to hug the shore closely, where the wind stands fair.

Plaintiffs, Greg and Judith Barringer, appeal from a judgment entered on September 2, 1992 in the District Court for the District of Vermont by Chief Judge Fred I. Parker. Judge Parker denied their request for declaratory and injunctive relief based on their claim that the Vermont Motor Vehicle Purchase and Use Tax, Vt.Stat.Ann. tit. 32, ch. 219 (1981 and Supp.1992), violates the Commerce Clause of the United States Constitution. *See Barringer v. Griffes*, 801 F.Supp. 1282, 1289 (D.Vt.1992). The district court also refused to grant the Barringers leave to amend their complaint to include a claim based on the Privileges and Immunities Clause. *See id.* at 1284 n. 2. Because we hold the Vermont use tax violates the Commerce Clause we need not reach or decide the refusal to permit plaintiffs to amend their complaint to include the latter claim.

## BACKGROUND

The Barringers purchased a 1988 Mazda 626 LT for $14,769 from Partyka Chevrolet in Hamden, Connecticut on September 23, 1988. They were then Connecticut residents and, in compliance with Connecticut law, they paid an approximately 7.5 percent sales tax

based on the price of the vehicle, and registered it in that state. The Connecticut sales tax cost them approximately $1,085.

A little less than two years later, on August 25, 1990, the Barringers moved to Middlebury, Vermont to permit Ms. Barringer to take up an assistant professorship in classical archaeology at Middlebury College. After arriving in their new home state they were told that under Vermont law they would have to pay a 4 percent use tax on the depreciated value of their automobile in order to register it there. (Vermont raised the use tax to 5 percent in 1991, though it will revert to 4 percent on July 1, 1993. *See* Vt.Stat.Ann. tit. 32, § 8903 (Supp.1992). The Barringers also learned that no credit would be granted them for the sales tax they had paid to the State of Connecticut. Because the automobile had a depreciated value of about $7,000, the Vermont 4 percent use tax amounted to $280. They found the total taxes they would pay on their car to both Connecticut and Vermont unacceptable.

In June 1991 plaintiffs therefore brought an action in Vermont Superior Court for declaratory and injunctive relief against the Vermont Motor Vehicle Commissioner, Michael Griffes, defendant-appellee. The Commissioner moved to dismiss the action for lack of subject matter jurisdiction on the grounds that the Barringers had to pay the tax and then seek an administrative refund from the Commissioner. The Barringers withdrew their state complaint and filed in its place on August 27, 1991 the instant federal action seeking the same declaratory and injunctive relief. Plaintiffs claimed that the Vermont tax violated the Commerce Clause of the United States Constitution because it did not grant them a credit for the sales tax they had paid on their Mazda in Connecticut.

The district court dismissed the action as soon as it was filed on the grounds that the case was barred by the Tax Injunction Act, 28 U.S.C. § 1341. On appeal we vacated the dismissal order and remanded the case to the district court, for further proceedings. *See Barringer v. Griffes*, 964 F.2d 1278, 1284 (2d Cir.1992). On remand the district court held a hearing on plaintiffs' motion for a preliminary injunction, and at the hearing's close

suggested consolidating the preliminary and permanent injunction phases of the case, to which both parties agreed. The motion for a preliminary injunction was thereafter consolidated with a trial on the merits pursuant to Fed.R.Civ.P. 65(a)(2). The Barringers also informed the trial judge that they planned to assert an additional claim based on the Privileges and Immunities Clause, and filed a motion to amend that same day.

The district court issued an opinion and order on September 2, 1992, holding that the Vermont Motor Vehicle Purchase and Use Tax did not violate the Commerce Clause, and denying plaintiffs' motion to amend their complaint because it was made too late. *See Barringer*, 801 F.Supp. at 1284 n. 2, 1289. This appeal followed.

## DISCUSSION

### I *Vermont Motor Vehicle and Purchase and Use Tax*

We are aware that the issue of the constitutionality of a sales and use tax focuses on an unsettled question of law that the Supreme Court has explicitly declined to address. That Court once before actually considered the same Vermont vehicle tax at issue before us in the context of a different case, *Williams v. Vermont*, 472 U.S. 14, 105 S.Ct. 2465, 86 L.Ed.2d 11 (1985). *Williams* held the statute facially violated the Equal Protection Clause to the extent that it granted a use tax credit to Vermont residents who purchased and registered vehicles outside of Vermont and thus paid sales taxes to another state, but did not grant the same credit to non-residents in similar circumstances. *See id.* at 27, 105 S.Ct. at 2474; Vt.Stat.Ann., tit. 32, § 8911(9) (1981) (credit for Vermont residents purchasing out-of-state). Accordingly, the Supreme Court in *Williams* did not reach the Commerce Clause questions raised by the parties. *See* 472 U.S. at 27, 105 S.Ct. at 2474. Having decided the case on other grounds, the Court explicitly noted, "[w]e again put to one side the question whether a State must in all circumstances credit sales or use taxes paid to another State against its own use tax." *Id.* at 28, 105 S.Ct. at 2474.

In response to *Williams,* Vermont issued an administrative ruling narrowing its statute. Under the regulations restricting § 8911(9) to comply with *Williams,* the sales tax credit is no longer available for Vermont residents who buy and register their automobiles in other states before registering them in Vermont. *See* Vt. Agency of Transp., Dep't of Motor Vehicles, Rule 86–28–E (July 5, 1985) (but the rule still allows a credit for Vermonters who purchase but do not register a vehicle out-of-state).

The statute and regulations currently operate as follows: § 8903(a) of Title 32 of the Vermont Statutes Annotated imposes a sales tax on the purchase of motor vehicles in Vermont; § 8903(b) of Title 32 imposes a use tax on motor vehicles that is payable upon registration of the vehicle with the Vermont Department of Motor Vehicles. Section 8903(b) further grants a credit against the Vermont use tax for any § 8903(a) Vermont sales tax paid. While a credit is thus available for any § 8903(a) sales tax paid to Vermont, no such credit is granted for a sales tax paid to any other state where the vehicle has been previously registered.

The administrative limitations adopted in response to *Williams* clarified this point and made apparent that no one, Vermonters or others, who purchases and registers a motor vehicle in another state will obtain the Vermont tax credit. Plaintiffs note, with some justification, that this administrative narrowing of the statute alters the practical effect of the tax scheme very little. There is virtually no reason why a Vermont resident would ever want to purchase and register a vehicle out-of-state before registering the same vehicle in-state.

Examining the history of these taxes, it is evident that sales taxes first came into being in the depression years of the 1930s. Use taxes were enacted to stem the loss of revenue to non-sales tax states from those individuals who might not have paid the sales tax. Use taxes are functionally equivalent to sales taxes. *See* Walter Hellerstein, *Complementary Taxes as a Defense to Unconstitutional State Tax Discrimination,* 39 Tax Law. 405, 406–09 (1986) [Hellerstein, *Complementary Taxes* ] (describing sales and use tax schemes). Typically a use tax, as the one before us, is levied upon the use, storage, or other consumption in the state of tangible personal property not already subjected to a sales tax. Vermont's automobile purchase and use taxes operate together with the avowed purpose of "improv[ing] and maintain[ing] the state and interstate highway systems." Vt.Stat.Ann. tit. 32, § 8901.

Here the State of Vermont designed its tax plans to grant a credit for taxes paid to Vermont so that a resident motorist either pays the sales tax or the use tax, but not both. Yet, under this system automobiles transported into the state become subject to a tax that is usually not levied on in-state vehicles; use taxes like Vermont's fall most heavily on owners of out-of-state autos. *See* Walter Hellerstein, *Is "Internal Consistency" Foolish?: Reflections on an Emerging Commerce Clause Restraint on State Taxation,* 87 Mich.L.Rev. 138, 159 n. 112 (1988) [Hellerstein, *Internal Consistency* ] (noting use taxes discriminate "on their face").

In order to appreciate fully whether Vermont's use tax contravenes the Commerce Clause, the state's legislation must be examined in the context of the sales *and* use taxes together since they represent complementary and compensating taxes designed to operate in tandem. In considering the two taxes together, we turn to the issue left open by *Williams* and now raised by the Barringers: whether Vermont's Motor Vehicle Purchase and Use Tax violates the Commerce Clause.

## II  *The Supreme Court's Construction of the Commerce Clause*

The sparse language of the Commerce Clause provides little guidance to its modern-day interpreters. That clause establishes simply that Congress shall have the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3. Only in the late 19th century did the Supreme Court first unequivocally hold that the Commerce Clause by its own force limited the authority of the states to tax interstate commerce. *See Case of the State Freight Tax,* 82 U.S. (15 Wall.) 232, 278–79, 21 L.Ed. 146 (1872); Hellerstein, *State Taxa-*

tion, *supra*, at 40. While the Court struggled for many years with the distinction between valid and invalid state taxes, *see generally* Hellerstein, *State Taxation, supra*, at 43–48, in the mid–1930s it developed as a test for constitutionality the multiple taxation doctrine. *See id.* at 48–49.

The multiple taxation doctrine formed the basis for recent developments in Commerce Clause case law. In *Western Live Stock v. Bureau of Revenue*, 303 U.S. 250, 258, 58 S.Ct. 546, 550, 82 L.Ed. 823 (1938), a case credited with establishing multiple taxation as the touchstone of constitutionality, Justice Stone explained, "under constitutional limitations, [a taxing system] must accommodate itself to the double demand that interstate business shall pay its way, and that at the same time it shall not be burdened with cumulative exactions which are not similarly laid on local business." Those two concerns continued to surface in later cases, including the 1977 decision that initiated the four-part test now characterizing the current era of Commerce Clause jurisprudence.

The Supreme Court first laid out its current Commerce Clause test in *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279, 97 S.Ct. 1076, 1079, 51 L.Ed.2d 326 (1977), where it upheld a tax on the privilege of doing business in-state as applied to a corporation involved in interstate commerce. *Complete Auto* reiterated *Western Live Stock*'s acknowledgement that interstate commerce was not immune *per se* from state taxation. *Id.* at 288, 97 S.Ct. at 1083. In the years since *Complete Auto*, the Supreme Court has faithfully applied its test, *see* Hellerstein, *State Taxation, supra*, at 56; *accord, e.g., Commonwealth Edison Co. v. Montana*, 453 U.S. 609, 617, 101 S.Ct. 2946, 2953, 69 L.Ed.2d 884 (1981), though the test's components have been the subject of elaboration, refinement and some dispute.

■ The four factors comprising the *Complete Auto* test may be succinctly stated: 1) whether the activity taxed has a substantial nexus with the state; 2) whether the tax is fairly apportioned; 3) whether the tax discriminates against interstate commerce; and 4) whether it is fairly related to benefits provided by the State. *See* 430 U.S. at 279,

97 S.Ct. at 1079. The opposing parties in the case before us agree that *Complete Auto* provides the relevant framework governing disposition of this case and that the first and fourth factors are satisfied by the Vermont motor vehicle tax scheme. Accordingly, only the second and third factors—fair apportionment, and discrimination against interstate commerce—remain to be analyzed in order for us to adjudge the constitutionality of Vermont's tax.

### III  *Fair Apportionment*

■ Plaintiffs first insist the Vermont tax does not fairly apportion the tax burden. They complain that, during the useful life of a vehicle transported interstate, it will be taxed more than a vehicle that remains in-state.

Although the meaning of fair apportionment was not precisely defined by *Complete Auto*, the phrase encompasses whether a tax is fairly attributable to an activity carried on in the taxing state. *See* Hellerstein, *State Taxation, supra*, at 57. That is to say, to survive constitutional scrutiny, the Vermont tax must be fairly apportioned to the taxpayer's activities in Vermont. In the present case, the district court passed over this issue too hastily, concluding that the use tax applied only to use in Vermont and that all vehicles were therefore taxed equally based on their presence in the state. The logic of this premise—and the State Commissioner's assertions along the same line—does not withstand scrutiny. The flaw in the reasoning becomes clear when use and sales taxes are examined together in the broader context of their impact on out-of-state goods.

A critical component in Vermont's scheme, one that appears as well in other compensating use taxes, is that use is only taxed through the surrogate of value. Although Vermont's "use" tax purports to tax use, in reality it actually taxes the value of goods or property just as does a sales tax. A use tax on "depreciated value" represents a necessary but imperfect approximation of the taxpayer's activities in the state. The perplexing question underlying this case—and for that matter all use tax cases—concerns the

precise circumstances under which it will be fair for Vermont to apportion a tax on goods transported into the state based on the value of the goods. This question, into which the district court did not delve, requires closer examination.

The Supreme Court has begun to address the question of fair apportionment in greater detail in part through developing what is known as the internal consistency test. *See Goldberg v. Sweet*, 488 U.S. 252, 261, 109 S.Ct. 582, 589, 102 L.Ed.2d 607 (1989) ("[W]e determine whether a tax is fairly apportioned by examining whether it is internally and externally consistent."). The internal consistency test, which was first propounded in *Container Corp. of America v. Franchise Tax Bd.*, 463 U.S. 159, 169, 103 S.Ct. 2933, 2942, 77 L.Ed.2d 545 (1983), has been applied to measure fair apportionment in a number of contexts. When taxes are complementary, the test examines a taxing scheme as a whole rather than focusing on one of its isolated components.

In *Goldberg*, the Court explained the test as follows: "[t]o be internally consistent, a tax must be structured so that if every State were to impose an identical tax, no multiple taxation would result." *Goldberg*, 488 U.S. at 261, 109 S.Ct. at 589. Applying the test in *Goldberg* it was found that an Illinois 5 percent tax on interstate telephone calls was fairly apportioned, in part because multiple taxation was precluded by Illinois' credit for any taxes paid to other states. *See id.* at 265, 109 S.Ct. at 591. Although in one case the Court noted that internal consistency is a component of both fair apportionment and non-discrimination against interstate commerce (the third *Complete Auto* factor), *see Armco, Inc. v. Hardesty*, 467 U.S. 638, 644, 104 S.Ct. 2620, 2623, 81 L.Ed.2d 540 (1984), most of the cases discussing internal consistency do so in the context of fair apportionment. *See, e.g., Goldberg*, 488 U.S. at 260–61, 109 S.Ct. at 588–89. The leading commentator on the subject considers internal consistency a component of fair apportionment. *See* Hellerstein, *Internal Consistency, supra*, at 175–79.

As plaintiffs correctly note, where the Supreme Court examines compensating use taxes under the internal consistency test, such taxes have been upheld as fairly apportioned when they provided for a credit, but have been rejected where no credit was allowed for taxes paid to other states. Thus, in *D.H. Holmes Co. v. McNamara*, 486 U.S. 24, 31, 108 S.Ct. 1619, 1623, 100 L.Ed.2d 21 (1988), a 3 percent Louisiana use tax on out-of-state mail order catalogs shipped to customers in-state was held not to violate the Commerce Clause because the state granted a tax credit for sales taxes paid to other states, making the tax fairly apportioned. Similarly the telecommunications tax in *Goldberg*, 488 U.S. at 265, 109 S.Ct. at 591, was upheld upon a finding that it was internally consistent and fairly apportioned because it provided for a credit upon proof that another state had taxed a call subject to Illinois' tax.

In contrast, a manufacturing tax levied by the State of Washington that provided no such credit was struck down in *Tyler Pipe Indus. v. Washington State Dep't of Revenue*, 483 U.S. 232, 248–49, 107 S.Ct. 2810, 2820–21, 97 L.Ed.2d 199 (1987), with the Court noting that an "exemption to provide out-of-state manufacturers with a credit for manufacturing taxes paid to other States would presumably cure the discrimination." In an earlier case decided long before the internal consistency test was born, the Supreme Court upheld a 2 percent Washington State use tax on tangible personal property where the state gave a credit for taxes paid in another state. *See Henneford v. Silas Mason Co.*, 300 U.S. 577, 587, 57 S.Ct. 524, 529, 81 L.Ed. 814 (1937).

Outside the case law, the importance of credits in saving compensating use taxes was also recognized prior to the advent of the internal consistency test. *See, e.g., Developments in the Law—Federal Limitations on State Taxation of Interstate Business*, 75 Harv.L.Rev. 953, 999 (1962) (noting "the main objection to allowing a state to adopt both [sales and use] taxes without a credit for previous sales taxes paid is that such combination tends to diminish interstate commerce whenever any other state has a sales or use tax"). Despite the key role credits have played in the constitutionality of state use taxes—before and after the internal

consistency test came into favor—the Supreme Court has stopped short of declaring that credits are constitutionally required for all use taxes. Noting the Court's reluctance to do so, we too decline to hold that a credit is constitutionally mandated in the instant case.

At the same time we reject the Vermont Motor Vehicle Commissioner's argument that the use tax must survive because it taxes only the depreciated value and not the purchase price value of the vehicle. Closer analysis demonstrates that multiple taxation still results and the internal consistency test is still violated even when the use tax only taxes the auto's depreciated value on registration. A simple example illustrates the point. Consider two $10,000 cars on which two different states levy a 5 percent sales tax. If car A were purchased in state 1 and moved to state 2, it could then be subject to a use tax, at an assumed 5 percent of its depreciated value. If its depreciated value were $5,000, then car A would overall be subject to state 1's sales tax of $500 *plus* $250 in state 2's use tax. Car A would thus be taxed a total of $750 while car B, if it remained in-state, would only be·subject to the initial $500 sales tax. Thus, multiple taxation of the interstate auto occurs even when a use tax is based on depreciated value. On the other hand, if a credit toward state 2's use tax were granted on car A for the taxes paid to state 1, then car A would only be taxed a total of $500 and no multiple taxation would result. *Cf.* Hellerstein, *Internal Consistency, supra,* at 159 (concluding that without credit provision all compensating use taxes violate internal consistency test).

Consequently, there are no obstacles to our determining that·the Vermont motor vehicle tax fails the internal consistency test and thus is not fairly apportioned. Applying the test demonstrates that if all the states employed Vermont's tax plan, an automobile registered in several states during its useful life would be taxed considerably more than a vehicle that spent its entire life in the same state. Absent a credit for taxes paid in other states, multiple taxation would heavily burden vehicles transported in interstate com-

merce, precisely the result the Commerce Clause was designed to prevent.

Although plaintiffs ask us to hold that a credit is affirmatively required if the statute is to be ruled constitutional, we decline this invitation to rechart our course because to adopt their suggestion would take us further from shore and give our holding a broader reach than necessary to decide this appeal. Examining the statute reveals that as it stands it does not fairly apportion the·taxes. What is to be·done now is a matter confided to the Vermont legislature. It may perhaps want to reexamine its motor vehicle tax program, and may or may not chose to include a credit,· or it may decide to abandon its use tax altogether, or attempt to employ some· other innovative tax to maintain its scenic roadways. While we acknowledge that were the statute to provide a credit it would no longer run afoul of the Commerce Clause, what steps are to be taken by the State of Vermont is up to that state's legislative body. We hold simply that as it stands, and for the reasons just given, Vermont's use tax is not fairly apportioned and therefore violates the Commerce Clause.

### IV  *Discrimination Against Interstate Commerce*

Appellants additionally declare the tax violates the Commerce Clause because it discriminates against interstate commerce. While we need not decide this issue, we address it to highlight the negative effects of the tax. Essentially appellants assert that due to the threat of double taxation, newcomers to Vermont and Vermont residents "wintering" in other states are faced with an incentive to purchase a vehicle in Vermont. In that way, they aver, the tax skews business towards Vermont automobile dealers.

The district court admitted "[t]he tax can create an incentive to defer buying a car until after completing a move to Vermont," but somehow concluded the tax "does *not* necessarily create an incentive to buy the car in Vermont." *Barringer,* 801 F.Supp. at 1289. We think its conclusion incorrect. In the absence of a credit the Vermont tax discriminates against interstate commerce by providing an advantage to local producers

whose products effectively will cost less and make out-of-state purchases disadvantageous. The Supreme Court has held repeatedly that "the Commerce Clause prohibits economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *New Energy Co. of Indiana v. Limbach,* 486 U.S. 269, 273, 108 S.Ct. 1803, 1807, 100 L.Ed.2d 302 (1988). While the Vermont Motor Vehicle Purchase and Use Tax differs from more blatantly discriminatory taxes in which out-of-state producers are taxed directly, *see Goldberg* 488 U.S. at 265–66, 109 S.Ct. at 591–92 (discussing facially discriminatory taxes), it is still problematic.

The discrimination component of the *Complete Auto* test has perhaps received more attention than any other in the Supreme Court's Commerce Clause jurisprudence involving facially discriminatory taxes. *See, e.g., Chemical Waste Management, Inc. v. Hunt,* —— U.S. ——, —— – ——, 112 S.Ct. 2009, 2012–14, 119 L.Ed.2d 121 (1992) (Alabama statute imposing additional fee on hazardous waste generated outside Alabama and disposed of at Alabama facilities held to violate Commerce Clause because it discriminated against interstate commerce on its face); *Armco,* 467 U.S. at 642, 104 S.Ct. at 2622 (West Virginia tax on gross receipts of businesses selling tangible personal property at wholesale, but granting exceptions from tax on sales by local manufacturers facially discriminated against interstate commerce). The question remains in this case as to whether a tax discriminates against interstate commerce when its secondary effects—not the operation of the tax on its face—create a bias towards in-state purchases.

The Motor Vehicle Commissioner ignores this aspect of the discrimination issue and wrongly asserts that the statute does not discriminate against interstate commerce because all motor vehicles are taxed at the same percent based on their purchase price or book value. Under the relevant case law, discrimination against interstate commerce certainly may be shown by the discriminatory effects of a tax that is facially-neutral. *See, e.g., Westinghouse Elec. Corp. v. Tully,* 466 U.S. 388, 406, 104 S.Ct. 1856, 1867, 80 L.Ed.2d 388 (1984) (New York tax credit granted to parent corporations whose subsidiaries shipped exports from a place of business in New York discriminated against interstate commerce by providing commercial advantage to local business and foreclosing tax-neutral decisions); *Nippert v. City of Richmond,* 327 U.S. 416, 429–31, 66 S.Ct. 586, 592–94, 90 L.Ed. 760 (1946) (municipal ordinance taxing traveling salesmen violated the Commerce Clause because its effects favored local merchants).

Numerous taxes have been invalidated due to their secondary, discriminatory effects based on the Commerce Clause. For instance, in *Bacchus Imports, Ltd. v. Dias,* 468 U.S. 263, 270, 104 S.Ct. 3049, 3054, 82 L.Ed.2d 200 (1984), the Supreme Court noted no state may impose a tax that provides a direct commercial advantage to local businesses. It struck down Hawaii's wholesale liquor tax that granted a tax exemption to wholesalers selling okolehao and other locally manufactured fruit wines. *Id.* at 273, 104 S.Ct. at 3056. Similarly, a Pennsylvania statute imposing lump-sum annual taxes on the operation of trucks on Pennsylvania highways was invalidated on the grounds that the taxes erected a financial barrier against interstate commerce. *American Trucking Ass'ns v. Scheiner,* 483 U.S. 266, 280–87, 107 S.Ct. 2829, 2838–42, 97 L.Ed.2d 226 (1987). The Supreme Court emphasized that a state may not tax an event more heavily for having crossed state lines, even when the tax is not discriminatory on its face, if that is its actual effect. *See id.* at 280–81, 107 S.Ct. at 2838–39. Such discrimination may not be characterized as merely incidental, which is what the appellee appears to argue in this case. *See Halliburton Oil Well Cementing Co. v. Reily,* 373 U.S. 64, 69–75, 83 S.Ct. 1201, 1203–07, 10 L.Ed.2d 202 (1963) (court looks not to theory but how statute operates in practice).

Appellants rightly point out that the Vermont tax scheme tends to induce individuals moving to Vermont to purchase their motor vehicles in Vermont. For one moving to Vermont, the tax scheme effectively lessens the cost of acquiring a vehicle if it is purchased there. The Commerce Clause pro-

hibits that sort of local favoritism. Hence, we hold the Vermont Motor Vehicle Purchase and Use Tax violates the Commerce Clause of the United States Constitution. Vermont's scheme fails to pass constitutional muster for two reasons: it does not fairly apportion the tax among interstate and intrastate commerce and the tax operates in such a way as to effectively discriminate against interstate commerce in favor of Vermont businesses. The tax unfairly burdens interstate commerce essentially by exacting a greater tax on vehicles transported into Vermont from other states than it does on Vermont-based vehicles not so transported.

## CONCLUSION

The judgment of the district court is accordingly reversed, and Vermont Motor Vehicle Purchase and Use Tax, Vt.Stat.Ann., title 32, ch. 219, is declared unconstitutional and void to the extent that the use tax is collected from out-of-state residents without crediting sales taxes they may have paid to other states.

VAN GRAAFEILAND, Circuit Judge, dissenting:

If my colleagues had decided to affirm the judgment of the district court, I would have been content to rest my concurrence on the well-written opinion of Chief Judge Parker reported at 801 F.Supp. 1282. However, because my colleagues have opted to reverse and their troublesome interpretation of the concepts of apportionment and internal consistency may lead to further review, I believe that I should state briefly why I believe that Chief Judge Parker was correct.

The State of Vermont operates on the practical theory that resident owners of vehicles registered and operated in Vermont should contribute to the cost of maintaining Vermont's highways. To accomplish this, Vermont levies a tax on Vermont residents' initial registration of pleasure vehicles in the State, which, in general, is equal to five percent of each vehicle's value. If the vehicle was purchased in Vermont, the tax is called a "sales" tax; if the vehicle was purchased elsewhere, the tax is called a "use" tax. Regardless of nomenclature, the taxes are in the same amount, i.e., five percent. There is no claim that this amount is excessive or not fairly related to the benefits received.

Because of my colleagues' emphasis on apportionment and internal consistency, it is important, I think, that we pinpoint exactly what is and what is not involved in this case. This case does not involve a tax levied on a so-called "unitary business," the customary genre of the internal consistency rule. *See Trinova Corp. v. Michigan Dep't of Treasury*, 498 U.S. 358, 373, 111 S.Ct. 818, 828, 112 L.Ed.2d 884 (1991); *Exxon Corp. v. Department of Revenue of Wisconsin*, 447 U.S. 207, 229, 100 S.Ct. 2109, 2123, 65 L.Ed.2d 66 (1980). It involves two individuals, each of whom purchased and operated a pleasure vehicle in Connecticut where he or she resided and thereafter moved with the vehicle to Vermont. It does not involve owners who are using their vehicles in an interstate commercial operation only part of which takes place in the State of Vermont. It involves Vermont residents who pay a five percent initial registration tax on their pleasure vehicles as their contribution to the cost of maintaining Vermont highways. Under the circumstances, I agree with Chief Judge Parker's comments concerning the irrelevance of fair apportionment in the instant case. *See* 801 F.Supp. at 1285–86.

The mechanics of unitary business taxation is discussed in some detail in *Container Corp. of Am. v. Franchise Tax Bd.*, 463 U.S. 159, 103 S.Ct. 2933, 77 L.Ed.2d 545 (1983), and more recently in *Allied–Signal, Inc. v. Director, Div. of Taxation*, —— U.S. ——, 112 S.Ct. 2251, 119 L.Ed.2d 533 (1992). For our purpose, the following excerpt from *Container Corp.* is illustrative:

Having determined that a certain set of activities constitute a "unitary business," a State must then apply a formula apportioning the income of that business within and without the State. Such an apportionment formula must, under both the Due Process and Commerce Clauses, be fair. The first, and again obvious, component of fairness in an apportionment formula is what might be called internal consistency—that is, the formula must be such that, if applied by

every jurisdiction, it would result in no more than all of the unitary business' income being taxed.

463 U.S. at 169, 103 S.Ct. at 2942 (citations omitted).

There is no issue of apportionment in the instant case. To apportion means to divide. *Black's Law Dictionary* 128–29 (rev. 4th ed. 1968). The tax at issue is a charge levied on Vermont inhabitants for the use of Vermont highways. It " 'cannot be repeated by any other state.' " *Quill Corp. v. North Dakota*, — U.S. —, —, 112 S.Ct. 1904, 1919, 119 L.Ed.2d 91 (1992) (White, J., concurring in part, dissenting in part) (quoting *Memphis Natural Gas Co. v. Stone*, 335 U.S. 80, 96–97, 68 S.Ct. 1475, 1484, 92 L.Ed. 1832 (1948) (Rutledge, J., concurring)). Conceivably, if appellants moved from Vermont to another state, that state could impose a tax for the use of its highways. That, however, would be a tax by a different entity based on a different use. "[C]lassification based upon residency is a rational way to assess for road use." *Williams v. Vermont*, 472 U.S. 14, 36, 105 S.Ct. 2465, 2478, 86 L.Ed.2d 11 (1985) (Blackmun, J., dissenting). Moreover, we are not concerned here with phantom peripatetic owners who move with their cars from state to state to state. To the extent that appellants' pleasure cars were involved in interstate commerce when appellants moved with the cars from Connecticut to Vermont, that involvement has ceased—apparently permanently. Although my colleagues discuss apportionment at some length, neither appellants nor my colleagues state what the Vermont tax should be apportioned with or against. Appellants' actual contention is that anyone who pays a sales tax when purchasing a car in Connecticut is entitled to a free ride on the highways of Vermont if, one, two, three, four or five years following the purchase, he or she moves with the car to Vermont. I find nothing in the Constitution that entitles them to this benefit.

As the Supreme Court stated in *Williams v. Vermont, supra*, Vermont's use tax is not typical of taxes bearing this name, because it was not designed to protect Vermont's revenues by taking away the advantages of residents traveling out of the state to make purchases at lower costs than would be available in Vermont. *Id.* at 24–25, 105 S.Ct. at 2472–73. It was designed pursuant to the principle that "those using [Vermont's] roads should pay for them." *Id.* at 25, 105 S.Ct. at 2473. In order for Vermont to make fair charges for the use of its highways it had to adopt some means of measuring use that was practical in operation and possessed at least a modicum of accuracy. Because of their shorter life expectancy, older vehicles ordinarily will make less use of highways than will newer and more highly valued cars. Accordingly, a tax that is based on a car's value bears at least a rough relationship to the benefits the car's owner will receive. In *Williams, supra*, the Supreme Court found this relationship sufficient to withstand constitutional scrutiny:

> [D]espite the looseness of the fit, we would be hard pressed to say that this manner of funding highway maintenance and construction is irrational. "If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' " *Dandridge v. Williams*, 397 U.S. 471, 485 [90 S.Ct. 1153, 1161, 25 L.Ed.2d 491] (1970), quoting *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78 [31 S.Ct. 337, 340, 55 L.Ed. 369] (1911).

*Id.*, 472 U.S. at 25 n. 9, 105 S.Ct. at 2473 n. 9.

In *United States v. City of Detroit*, 355 U.S. 466, 78 S.Ct. 474, 2 L.Ed.2d 424 (1958), the Government, similarly to my colleagues herein, argued that since the tax involved was "measured by the value of the property used it should be treated as nothing but a contrivance to lay a tax on that property." *Id.* at 470, 78 S.Ct. at 476. Rejecting this argument, the Court said:

> We do not find this argument persuasive. A tax for the beneficial use of property, as distinguished from a tax on the property itself, has long been a commonplace in this country.

*Id.*

In short, I am compelled to disagree with my colleagues' assertion that, "[a]lthough Vermont's 'use' tax purports to tax use, in

reality it actually taxes the value of goods or property just as does a sales tax." *Supra*, at 1335.

Vermont's use tax on motor vehicles is based upon an estimated use of Vermont's highways, in the same manner and in the same amount as is Vermont's sales tax on motor vehicles. Because a similar calculation is made for both use and sales taxes, I am unmoved by my colleagues' plaint that "use taxes like Vermont's fall most heavily on owners of out-of-state autos." *Supra*, at 1334. Of course they do. Owners of cars purchased in Vermont pay a sales tax which is for the same amount as the use tax and therefore falls with equal and off-setting weight on those owners. The fairness of a tax is determined by its effect, not by its name.

It is too late in the day to successfully contend that a state may not levy a tax such as Vermont's use tax simply because it may have some adverse effect on interstate commerce. A state " 'is free to pursue its own fiscal policies, unembarrassed by the Constitution, if by the practical operation of a tax the state has exerted its power in relation to opportunities which it has given, to protection which it has afforded, to benefits which it has conferred by the fact of being an orderly, civilized society.' " *Commonwealth Edison Co. v. Montana*, 453 U.S. 609, 625, 101 S.Ct. 2946, 2957, 69 L.Ed.2d 884 (1981) (quoting *Wisconsin v. J.C. Penney Co.*, 311 U.S. 435, 444, 61 S.Ct. 246, 249–50, 85 L.Ed. 267 (1940)); *see Quill Corp. v. North Dakota*, *supra*, —— U.S. at —— n. 5, 112 S.Ct. at 1912 n. 5. That, I believe, is precisely what Vermont is doing in this case.

Fairness, I suggest, is a two-way street. Those Vermont inhabitants who purchased their cars in Vermont get no benefit whatever from sales taxes paid by other residents who purchased their cars while residing in Connecticut. The latter, however, get the same benefits from highway improvements, traffic control, removal of snow and other debris as do the former. Vermont asks only that both pay a like amount for benefits equally received. I see nothing violative of the Constitution in this. I would affirm.[1]

1. Because Norman Williams, the plaintiff in *Williams v. United States, supra,* and one of the counsel for appellants herein, has made somewhat of a career out of challenging the Vermont statute at issue herein, I cannot fault the district court for denying Williams' last minute motion to amend the complaint to assert a cause of action under the Privileges and Immunities Clause of the Constitution. In any event, I believe the end result would be the same if the amendment had been granted.